IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

ENTERED
11/23/2010

|                              |   |                        |
|------------------------------|---|------------------------|
| IN RE                        | ) |                        |
|                              | ) |                        |
| JOHN W. SMALL,               | ) | CASE NO. 07-80596-G3-7 |
|                              | ) |                        |
|          Debtor,             | ) |                        |
|                              | ) |                        |
| JOHN W. SMALL,               | ) |                        |
|                              | ) |                        |
|          Plaintiff,          | ) |                        |
| v.                           | ) | ADV. NO. 09-8015       |
|                              | ) |                        |
| MURRIAH MCMASTER, ET AL.,    | ) |                        |
|                              | ) |                        |
|          Defendants.         | ) |                        |
|                              | ) |                        |

<u>MEMORANDUM OPINION</u>

The court has held a trial in the above captioned adversary proceeding.  John W. Small, the Debtor in the above captioned Chapter 7 case and the Plaintiff in the instant adversary proceeding, is involved in numerous pieces of litigation in this court and other courts.[1]  It is an unfortunate circumstance of his having represented himself that the grounds

---

[1]Notably, although Debtor has asserted that he married Aiskel Alvarez in a civil ceremony in 1999, Murriah McMaster filed suit for divorce in 2004, seeking a determination that she had been married to Debtor in a common law marriage since 1991, and Kathy Ellington filed suit for divorce in 2005, seeking a determination that she had been married to Debtor in a common law marriage since 1987.  Also, in addition to the instant Chapter 7 case, Robert Small, Debtor's son (who is himself a defendant in litigation brought by McMaster) and Star Instruments, Inc. (an entity related to John Small and Robert Small) are debtors in bankruptcy.

on which he sought relief in the instant adversary proceeding
were addressed along with some of the issues raised in other
litigation, such that it was not entirely clear what relief he
was seeking in the instant adversary proceeding until the
completion of the evidence.  However, in general his presentation
was careful and organized.  The following are the Findings of
Fact and Conclusions of Law of the court.  A separate conforming
Judgment will be entered.  To the extent any of the Findings of
Fact are considered Conclusions of Law, they are adopted as such.
To the extent any of the Conclusions of Law are considered
Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

<u>Background</u>

          Prior to the petition in the instant Chapter 7 case,
Murriah McMaster sued John W. Small ("Debtor") in the County
Court No. 1 of Galveston County, Texas (the "State Court"),
asserting that a common law marriage existed between McMaster and
Debtor, and seeking a divorce.  The State Court bifurcated the
questions of whether the parties were married, and the divorce
action.  After a jury trial, the State Court entered an
interlocutory judgment holding that McMaster and Debtor were
married.  (Plaintiff's Exhibit 3).[2]

———————————————

          [2]The evidence before the court is that the successful suit
by McMaster establishing a common law marriage was her second
such suit, the first of which involved a different common law

2

On July 19, 2005, Debtor filed a Chapter 7 petition, in Case No. 05-81975-G3-7.  Two days later, McMaster moved for relief from stay, and on August 24, 2005, the court entered an order lifting the stay in Case No. 05-81975-G3-7 to permit her to continue prosecuting her divorce proceeding against Debtor. (Docket No. 8, Case No. 05-81975-G3-7).

On November 1, 2005, the State Court ordered Debtor to pay $4,000 per month to McMaster as temporary spousal support. (Plaintiff's Exhibit 3).

The State Court conducted a second jury trial, in October, 2007.  The second jury made findings regarding which properties were community property, Debtor's separate property, or third party property, and made findings regarding the value of the community property.  The second jury found, <u>inter</u> <u>alia</u>, that Harry and Alexandra Shepherd were bona fide purchasers of real property located at 2901 Broadway, Galveston, Texas (where McMaster had operated a furniture, antiques, and accessories business known as "the Gingerbread House").  The jury was instructed by the State Court that the inventory of the Gingerbread House was community property of Debtor and McMaster. The jury determined that the value of the inventory was $80,000. (Plaintiff's Exhibit 3).

After the second jury made its findings, but before a

---

spouse.

divorce decree was entered, on November 8, 2007, Debtor filed a
voluntary petition under Chapter 7 of the Bankruptcy Code.

Debtor's schedule I indicates that he has income of
$1,140 per month from Social Security.  Debtor's schedule I does
not indicate any additional source of income.  (Docket No. 10,
Case No. 07-80596-G3-7).

On January 3, 2008, McMaster moved for relief from
stay, in order:

> solely to allow the state court to issue judgments and
> orders concerning (i) support; (ii) the classification
> of property as separate or community, (iii) the
> liquidation of claims between the parties, and to allow
> any party to the state divorce court case to prosecute
> appeals of the  state court final orders.

(Docket No. 14, Case No. 07-80596-G3-7).

On February 14, 2008, after a hearing, this court
entered its "Order for Partial Relief From the Stay."  The agreed
order, which bears signatures of counsel for the Debtor[3], counsel
for McMaster[4], and counsel for the Chapter 7 Trustee, provides:

---

[3]Debtor was previously represented in the Chapter 7 case by
Ronald Gipson.  Debtor is now represented in the Chapter 7 case
by Jeffrey Norman.  Although Norman filed the original complaint
in the instant adversary proceeding on Debtor's behalf, Norman
subsequently withdrew as counsel, and, with leave of court,
Debtor subsequently amended the complaint in the instant
adversary proceeding.  Debtor has proceeded pro se, in the
instant adversary proceeding.

[4]McMaster was previously represented, in the Chapter 7 case
and in the instant adversary proceeding, by J. Craig Cowgill.
Cowgill represents defendants John F. Nichols, Sr. and Pamela
Bergman in the instant adversary proceeding, but has withdrawn
from representation of McMaster, both in the Chapter 7 case and

4

1.    The automatic stay is modified to allow the entry
of a judgment by the County Court at Law No. 1 of
Galveston County, Texas consistent with the evidence
and the jury verdict entered in Cause No. 04FD2562.
Murriah S. McMaster shall provide at least 10 days
notice of any such hearing for entry of judgment by fax
and certified mail to David R. Jones, Porter & Hedges,
L.L.P., 1000 Main Street, 36th Floor, Houston, Texas
77002, (713) 226-6253 (facsimile).  Any proposed form
of judgment shall also be delivered to Mr. Jones prior
to any hearing.

2.    The automatic stay is further modified to allow
the County Court at Law No. 1 of Galveston County,
Texas to (i) enter a divorce between the debtor and
Murriah S. McMaster; (ii) to determine the amount of
any future support owed by the debtor to Murriah S.
McMaster so long as such support is paid from the
future earnings of the debtor and not from property of
the bankruptcy estate; (iii) to determine the amount of
any monetary damage claim held by Murriah S. McMaster
against the Debtor; (iv) enter any other order against
any non-debtor parties.

3.    The County Court at Law No. 1 of Galveston County,
Texas may allocate the community estate between the
debtor and Murriah S. McMaster.  Notwithstanding the
foregoing, all community property is property of the
bankruptcy estate and shall be delivered to Robbye R.
Waldron, chapter 7 trustee.  It is agreed that all
property that is the subject of the jury verdict and
the divorce proceeding is either community property or
the debtor's separate property, save and except the
real property located at 2901 Broadway.

4.    Any party in Cause No. 04FD2562 may prosecute an
appeal of the orders and/or judgments of the County
Court at Law No. 1 of Galveston County, Texas.

5.    All other relief is denied.

---

in the instant adversary proceeding.  McMaster has proceeded <u>pro
se</u>, in the instant adversary proceeding.

(Docket No. 31, Case No. 07-80596-G3-7).[5]

On October 21, 2009, the state court entered a divorce decree.  (Docket No. 51, Case No. 07-80596-G3-7).[6]  Debtor testified that he has appealed both the interlocutory judgment determining that a common law marriage existed and the divorce decree.  Debtor testified that the appeal remains pending.

<u>Motion for Enforcement</u>

On October 10, 2008, McMaster filed a motion for enforcement of the temporary support order.[7]  In the motion, McMaster requested that the State Court:

> order Respondent to pay Movant all outstanding spousal support arrears due and owing at the time of the hearing, including interest thereon.  Movant further requests that Respondent be held in contempt, jailed, not more than six (6) months and fined not more than $500.00, for each violation alleged above.

_____

[5]In a Judgment entered on June 5, 2008, this court abated the requirement, in Paragraph 3 of the order, that community property be turned over to Trustee.  (Docket No. 40, Case No. 07-80596-H3-7).

[6]Notwithstanding the jury's determination that the inventory of the Gingerbread House was community property, and that Harry and Alexandra Shepherd were bona fide purchasers for value of the real property where the Gingerbread House was located, the divorce decree purports to award title to the real property, and the entirety of the inventory, to McMaster.

[7]Nichols testified that the motion was the fifth motion.  He testified that there was no hearing on the previous four motions. He testified that the motion was amended from time to time, to reflect additional months of spousal support not paid.  He testified that amending the motion in this fashion is a common practice in the family courts.

(Nichols and Bergman's Exhibit 2).[8]  The motion was signed by John F. Nichols, Sr. on behalf of McMaster.  The signature block on the motion also reflected that Pamela K. Bergman was counsel for McMaster.

In the instant adversary proceeding, Debtor, pro se, seeks damages against McMaster, Nichols, and Bergman, for willful violation of the automatic stay.  Debtor asserts that McMaster, Nichols, and Bergman willfully violated the automatic stay by continuing to seek a finding of contempt and confinement of Debtor notwithstanding the automatic stay.

The State Court held a hearing on McMaster's motion for enforcement on October 29, 2008.  At the hearing, Nichols and Bergman appeared on McMaster's behalf.  Nichols presented evidence and argument at the hearing on McMaster's behalf.[9] (Nichols and Bergman's Exhibit 4).

At the October 29, 2008 hearing, Debtor, appearing pro se, argued that the hearing was stayed by the automatic stay in the instant Chapter 7 case.  (Nichols and Bergman's Exhibit 4, at p. 102-103).  Nichols, on behalf of McMaster, objected to admission of a certified copy of this court's agreed order of

---

[8]In the quoted section, Debtor is identified as the Respondent, and McMaster is identified as the Movant.

[9]Bergman's sole involvement on the record at the hearing was to ask about the date and time of a future hearing.  (Nichols and Bergman Exhibit 4, at p. 164.)

February 14, 2008, addressing the precise terms as to which items could go forward in the State Court as a result of partial lifting of the stay, on grounds it had not been tendered 14 days in advance of the hearing.  The State Court sustained the objection, and continued to conduct the hearing.[10]

At the conclusion of the October 29, 2008 hearing, Nichols argued, on behalf of McMaster, that notwithstanding this court's order, the State Court should hold Debtor in contempt, set a date for a compliance hearing, and put Debtor in jail if he failed to pay the spousal support.  (Nichols and Bergman's Exhibit 4, at p. 159-160).[11]

At the conclusion of the October 29, 2008 Galveston State Court hearing, the state court found Debtor in contempt, and ordered Debtor confined in jail for 179 days.  The court ordered that:

> Said confinement is suspended or probated for one year conditioned upon a lump sum payment of $124,000 paid in four installments.  I don't think I said that right. It's one payment paid in four installments of $31,000.

---

[10]It appears that the state court, at Nichols' urging, treated a certified copy of this court's order as a business record, and thus excluded the certified copy from admission into evidence on grounds that the 14 day notice provisions of Rule 902(10), Tex. R. Civ. Evid., applied.

[11]Nichols testified that he requested that the state court hold Debtor in criminal contempt.  He testified that he did not seek that Debtor be held in civil contempt as a means of compelling Debtor to pay the past due spousal support.  The court finds this self-serving testimony not credible, in light of Nichols' request that the State Court set a compliance hearing.

The first payment of $31,000 is due on or before
December the 1st, 2008.  The second payment, $31,000,
is due on or before January the 1st, 2009.  The third
installment of $31,000 is due on or before February the
1st, 2009.  And the fourth installment of $31,000 is
due on or before March the 1st, 2009.

(Nichols and Bergman's Exhibit 4, at p. 162).

Debtor sought mandamus directed to the State Court, on
grounds the State Court's contempt order violated the automatic
stay.  On May 7, 2009, the Fourteenth Court of Appeals for the
State of Texas determined that the contempt order providing for
jailing of Debtor was void, and conditionally granted mandamus,
providing that a writ of mandamus would issue if the State Court
did not vacate its order.  (Nichols and Bergman's Exhibit 5).

On September 1, 2009, the State Court vacated its order
for contempt and confinement, and entered a money judgment
against Debtor.  (Debtor's Exhibit 5).

At the trial of the instant adversary proceeding,
Debtor testified that he incurred legal fees in the prosecution
of the mandamus proceeding in the Fourteenth Court of Appeals.
Debtor testified that he has reviewed the invoices of his counsel
in the mandamus action, McLeod, Alexander, Powel & Apffel, P.C.
He testified that he believes the invoices reflect a fee owing of
$270,064, of which he believes $113,102.42 relates to the
mandamus action.

Debtor presented 42 pages of invoices from the firm of
McLeod, Alexander, Powel & Apffel, P.C.  The invoices cover a

9

period from November 1, 2007 through March 31, 2009.  The

invoices reflect a beginning balance of $270,064.00, additional

fees billed between November 1, 2007 through March 31, 2009 of

$142,626.26, and payment of $18,000.00, for an ending balance of

$394,690.26.  This court has reviewed the invoices in detail.

None of the matters contained in the invoices prior to October

10, 2008 are related to the defense of the October 10, 2008

motion for contempt, or the prosecution of the mandamus

proceeding.  Beginning on October 13, 2008, the firm billed

$825.00 in fees and $1,220.86 in expenses for the remainder of

October, 2008, $17,075,00 in fees and $819.75 in expenses for

November, 2008, $4,475.00 in fees and $203.39 in expenses for

December, 2008, $11,312.50 in fees and $587.88 in expenses for

February, 2009, and $5,200.00 in fees and $388.98 in expenses for

March, 2009, for a total of $42,108.36, in defending the October

10, 2008 motion for contempt and prosecuting the mandamus

proceeding.

## The Gingerbread House

In the instant adversary proceeding, Debtor also seeks

damages against McMaster, Bergman, and George Simmons (the

bailiff in the state court).  Debtor asserts that McMaster,

Bergman, and Simmons violated this court's order of February 14,

2008 by exercising control over property of the bankruptcy

estate, by moving property from the Gingerbread House.[12]

McMaster testified that, in 1997, she began operating
the Gingerbread House.  She testified that the Gingerbread House
had fourteen rooms, filled with inventory held for sale.  She
testified that, although some of the items contained in the
Gingerbread House were antiques, the bulk of the Gingerbread
House's inventory consisted of gifts and seasonal decorative
items.  She testified that she advertised that the Gingerbread
House sold fine European, American, and Oriental furniture and
antiques, complete sets of china at various times, Lalique,
Baccarat, Steuben, Waterford, and American cut brilliant crystal,
vintage linens, fine jewelry, and, from time to time, diamonds
and furs.  She testified that the Gingerbread House was an
exclusive dealer for James R. Moder crystal chandeliers.  She
testified that she also sold some goods on consignment, and also
conducted estate sales.

Sue Kelly testified that during September, 2007,
McMaster conducted an estate sale for Kelly, after the death of
Kelly's husband, and before Kelly moved to Raleigh, North
Carolina.[13]  Kelly testified that, on the advice of her realtor,

_____

[12]Debtor also asserted claims against Mary Nell Crapitto,
the judge in the state court.  This court has previously
dismissed Debtor's claims against Crapitto.

[13]Kelly appears to have a dispute with McMaster, with regard
to the conduct of the estate sale.  Nonetheless, Kelly's
testimony is credible.

she agreed to move some items out of her home temporarily.  She testified that McMaster offered to allow her to use McMaster's storage facility for free.  She testified that McMaster had told her the storage facility was empty, and that Kelly's goods would not be commingled with those of the Gingerbread House.  She testified that she provided a lock to McMaster, and her goods were sent away.  Kelly testified that, when she requested that her items be returned to her home, to prepare for the estate sale, she learned that several of the items had been taken to the Gingerbread House.

Kelly testified that McMaster insisted on cashing checks she received in payment for the items sold at Kelly's estate sale at the banks on which they were drawn, rather than depositing the checks into her own bank account.  She testified that McMaster never gave her an accounting of the items sold, the prices for which those items were sold, or the disposition of the proceeds of the estate sale.  She testified that, although McMaster had assured her that the value of the property to be sold was between $25,000 and $30,000, she was told that the proceeds of the sale were approximately $11,000.

Bergman testified that she visited Kelly's estate sale.  She testified that she purchased some items, and paid McMaster for those items.  Kelly testified that Bergman took from the estate sale an antique table and several other items.  Kelly

12

acknowledged in her testimony that Bergman says she paid McMaster for the items.  Kelly testified that she was never paid for the items.

McMaster testified that, during 2009, Hurricane Ike caused damage to the walls, foundation, canopy, and railing of the Gingerbread House.  She testified that there was 18 to 20 inches of water inside the central part of the Gingerbread House, and five feet of water in the back part of the house.  She testified that many things were destroyed.

McMaster testified that she did not move anything out of the Gingerbread House before Hurricane Ike arrived.  She testified that she did not maintain insurance for the contents of the Gingerbread House.

McMaster testified that, during March, 2010, the State Court ordered that she vacate the Gingerbread House within 40 days after the State Court entered its order.  She testified that she consulted with Nichols regarding whether she was required to move items from the Gingerbread House.  She testified that she moved the property first to a storage facility in Humble, Texas, and then to a storage facility on Interstate Highway 45 called The Depot.[14]  She testified that the property remains in storage, in a 2,100 square foot storage unit.

---

[14]The court takes judicial notice that there is a telephone listing for a storage facility called "The Depot," on Interstate Highway 45 in League City, Texas.

<u>Gift of a Van to Simmons</u>

Simmons is the bailiff in the County Court at Law No. 1 of Galveston County, Texas.  Mary Nell Crapitto is the judge of that court.  This is the court that heard the McMaster v. Small divorce and contempt matters.  Simmons testified that he has regular contact with jurors.  He denies ever threatening or trying to influence jurors.

McMaster testified that, during 2001 or 2002, she traveled to Tennessee to pick up a van.  She testified that her brother was giving the van, a 1991 Plymouth, to her and to Vera Dever, for the Gingerbread House business.[15]  She testified that she used the van for about one year, then parked it at the Gingerbread House.

George Simmons, the bailiff at the State Court, testified that he had approached Dever to solicit a donation for a basketball team he was coaching.  He testified that she donated funds to his team on that occasion.

Dever testified that the van was parked at the Gingerbread House for about two years, and had become an eyesore. She testified that she approached McMaster about giving the van to Simmons to transport his team.

Simmons testified that the value of the van was

---

[15]Although both McMaster and Dever testified that the van was given to both of them, only McMaster took title to the van.

14

approximately $400 to $500.  He testified that he was required to replace the battery and the alternator, and repair the passenger door of the van.  He testified that, approximately two weeks later, he got title to the van.

An application for transfer of title of the van from McMaster to Simmons was filed on January 11, 2007.  The title was transferred effective on January 29, 2007.  (Simmons Exhibit 1). McMaster filed her divorce proceeding against Debtor on August 6, 2004.  McMaster's motion to enforce was heard on October 29, 2008.

Dever testified that Simmons never dealt directly with McMaster.  Dever testified that she dealt with Simmons, and then brought paperwork to McMaster, in order to transfer title from McMaster to Simmons.

McMaster testified that she did not give the van to Simmons.  McMaster testified that, when Dever brought her the paperwork to transfer the van to Simmons, McMaster did not know that Simmons was the bailiff of the State Court.  This testimony is not credible.[16]

---

[16]The court notes that there was extensive evidence on the question of whether Simmons worked for McMaster.  Ellen Burton, who resides next door to the Gingerbread House, testified that Simmons was often present at the Gingerbread House, picking up and delivering goods.  She testified that Simmons was introduced to her as "George Simmons, Vera Dever's son."  Kelly testified that Simmons picked up and delivered items to her home from the Gingerbread House for McMaster.  Simmons testified that he was present at Kelly's home once, to solicit donations, and was at

Simmons testified that the van was destroyed by Hurricane Ike.  He testified that, when he returned to Galveston, Texas from La Marque, Texas after the storm, he found the van full of debris.  He testified that, when he returned a week later, the van was gone.

### Conclusions of Law

Section 362(a) stays, inter alia:

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. §§ 362(a)(2); 362(a)(3).

Under Section 362(b), the filing of a petition does not operate as a stay, inter alia:

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a)--

(A) of the commencement or continuation of a civil action or proceeding-

* * *

(ii) for the establishment or modification of an order for domestic support obligations;

_____

the Gingerbread House a few times to visit Dever.  Simmons suggests that Burton's testimony that he picked up and delivered goods stems from one instance in which he removed boxes and a chair from the van before he took possession of it.  Simmons' facile suggestion is not credible.

16

* * *

        (B) of the collection of a domestic support
        obligation from property that is not property of
        the estate;

* * *

11 U.S.C. § 362(b).

        Under Section 541 of the Bankruptcy Code, all legal and

equitable interests of the debtor in property as of the

commencement of the case are property of the bankruptcy estate.

Property declared as exempt remains property of the bankruptcy

estate until it is withdrawn from the bankruptcy estate for the

benefit of the debtor.   In re Luongo, 259 F.3d 323 (5th Cir.

2001).  In the instant Chapter 7 case, the determination of the

Chapter 7 trustee's objection to the debtor's exemptions remains

abated, pending final resolution of the underlying divorce

action.  Thus, the disputed property remained property of the

bankruptcy estate, and an action in state court to collect

spousal support from the Debtor could not properly  have been

taken even to collect from property that might ultimately be

determined not to be property of the bankruptcy estate.  The

court concludes that, initially, the collection action was

stayed.

        Likewise, this court's order lifting the stay in part

did not permit the collection of spousal support from property

that was property of the bankruptcy estate.  This court lifted

17

the stay, in part, to provide that the State Court could "determine the amount of any future support owed by the debtor to Murriah S. McMaster so long as such support is paid from the future earnings of the debtor and not from property of the bankruptcy estate."  Unfortunately, the State Court excluded admission of a certified copy of this order, and thus was not in a position to construe the order.  See Footnote 10.

No evidence was presented to the State Court regarding Debtor's earnings.  Rather, the evidence focused on Debtor's failure to pay the spousal support.  The court notes that Debtor's scheduled income was only $1,140 per month, an amount insufficient to pay the contemporaneous spousal support award of $4,000 per month, without taking into consideration the support arrearage or funds to support Debtor's survival.

Under Section 362(k)(1), with exceptions not pertinent to the instant case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  The party seeking damages has the burden of proof as to both injury by a willful violation of the stay and damages.  In re Mullican, 417 B.R. 389 (Bankr. E.D. Tex. 2008); In re Nixon, 419 B.R. 281 (Bankr. E.D. Pa. 2009).

There are three elements for an action under Section

18

362(k):  the defendant must have known of the existence of the stay; the acts must have been intentional; and the acts must have violated the stay.  In re Chesnut, 422 F.3d 298 (5th Cir. 2005); In re Repine, 536 F.3d 512 (5th Cir. 2008).

 In the instant case, it is clear that defendants McMaster, Bergman, and Nichols knew of the existence of the stay. They acted intentionally in seeking to force Debtor to pay arrears or go to jail, without focusing on whether there was property that was not property of the bankruptcy estate from which to make the payment.  Their acts violated the stay.[17]

 In the instant case, Debtor proved actual damages of $42,108.36 caused by the Defendants' willful violation of the stay.  Debtor's actual damages also include the $250 filing fee for the instant adversary proceeding.  The court concludes that Debtor should recover $42,358.36, for the Defendants' willful violation of the automatic stay in seeking to coerce his payment of spousal support arrearages by obtaining a court order directing him to serve jail time unless he paid the spousal support arrearages.

 The credible testimony is that both McMaster and

---

[17]The court notes that the Fourteenth Court of Appeals reached the same result.  The determination of the Fourteenth Court of Appeals is not the law of the case with respect to whether Defendants' acts did in fact violate the stay.  However, the Fourteenth Court of Appeals was correct in its determination that Defendants' acts violated the stay.

Nichols participated in the efforts to convince the state court that Debtor should be jailed if he did not pay.  The court concludes that McMaster and Nichols are jointly and severally liable for Debtor's actual damages.

With respect to Bergman, nothing in the evidence indicates that she did anything more with respect to the motion for enforcement than to provide legal support services to Nichols in his representation of McMaster.  The court concludes that Bergman is not liable to Debtor.

On the question of punitive damages, the Fifth Circuit has held that punitive damages should be granted in circumstances involving egregious, intentional misconduct on the violator's part.  In re Repine, 536 F.3d 512 (5th Cir. 2008).  In the instant case, although the actions of McMaster and Nichols are reprehensible, they do not rise to the level of intentional misconduct.  Although it appears that Nichols, on behalf of McMaster, presented an argument to the State Court based on a mistaken interpretation of both the law and this court's order, and injured Debtor in doing so, it is not clear that Nichols intentionally misrepresented the contents of this court's order to the State Court.  The court concludes that punitive damages should not be awarded in the instant case.

With respect to Debtor's contention that McMaster, Bergman, and Simmons violated this court's order of February 14,

20

2008, the court previously had stayed effectiveness of the

portion on which Debtor bases his complaint.  Moreover, Debtor

either lacks standing to assert those causes of action, or those

causes of action are not ripe.[18]  To the extent such causes of

action may exist, they are property of the bankruptcy estate, and

belong to the Chapter 7 trustee.  In re Calvin, 329 B.R. 589

(Bankr. S.D. Tex. 2005); See also In re Educators Group Health

Trust, 25 F.3d 1281 (5th Cir. 1994).[19]  The court concludes that

---

[18]The instant case is distinguished from St. Paul Fire &
Marine Ins. Co. v. Labuzan, 579 F.3d 533 (5th Cir. 2009).  In
that case, the creditor contended that the debtors, who were
seeking damages for a willful violation of the stay, lacked
standing because the causes of action they asserted were property
of the estate.  The Fifth Circuit rejected the creditor's
contention, holding that a claim for damages under Section 362(k)
is not property of the bankruptcy estate, because it necessarily
occurs postpetition.  In the instant case, however, what Debtor
asserts (which was not entirely clear until the conclusion of the
evidence) is that McMaster and others retained possession of
property stated in this court's interlocutory judgment with
respect to exemptions to be property of the bankruptcy estate.
The cause of action pled in the instant adversary sounds in
turnover to the Trustee of property to the estate.  Debtor lacks
standing to assert a claim because he has suffered no injury in
fact.  If, after the appeal of the divorce judgment has become
final, the court were to determine the Trustee's objection to
exemptions in Debtor's favor, then Debtor might conceivably have
a cause of action for willful violation of the stay based on the
defendants' postpetition retention of the inventory of the
Gingerbread House.

[19]The court notes also that among the transactions of which
Debtor complains, the evidence was that both McMaster's gift of
the van to Simmons and Bergman's purported purchase of items at
Kelly's estate sale occurred prepetition.  While it creates a
strong appearance of impropriety when a litigant sells goods
owned by someone else to her attorney, or makes a gift to the
bailiff of the court in which the litigation in which she is
involved is pending, these items are not actionable for violation

Debtor is not entitled to any recovery in the instant adversary proceeding on the grounds that any of the defendants exercised control of property of the estate by virtue of retaining items from the Gingerbread House or the 1991 Plymouth Van.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on November 23, 2010.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

of this court's orders.  With respect to the continued dispute as to property that was in the Gingerbread House, the evidence is that the property is stored, and awaits resolution, first in the Fourteenth Court of Appeals (and in any subsequent appeal), and then, on continued consideration of the Trustee's objection to exemptions, in this court.